UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 1:14-cr-20628

v.                                           Honorable Thomas L. Ludington
                                               United States District Judge
RONRICO SIMMONS, JR. ,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE**

Currently before the Court is Defendant RonRico Simmons's Motion for Compassionate Release. As explained below, this Motion will be denied because Defendant has not demonstrated exhaustion, has not provided any extraordinary or compelling reasons that warrant his release, and has not shown that his release accords with the 18 U.S.C. § 3553 sentencing factors.

**I.**

In October 2014, the Grand Jury returned an Indictment charging Defendant RonRico Simmons, Jr. with conspiring to possess with the intent to distribute and to distribute a substance containing at least one kilogram of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count I) and using "residences in Roscommon County," Michigan "to use, store, and distribute controlled substances, including heroin, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. (Count II). ECF No. 1. Defendant proceeded to trial in May 2016 but pleaded guilty to both counts on the fifth day of trial. ECF No. 42 at PageID.177–78.

Defendant's Rule 11 Plea Agreement outlined the relevant facts as follows:

> From approximately 2011 to on or about August 1, 2012, [Defendant] knowingly and unlawfully conspired or agreed with Edwin Simpson, a/k/a/ Rock, and others

> to possess with the intent to distribute and to distribute heroin. Over the course of the conspiracy, quantities totaling a kilogram or more of heroin were distributed by members of the conspiracy.
>
> As part of the conspiracy, [Defendant] obtained heroin from others and distributed some of that heroin to Simpson, a/k/a Rock, and others. Based on the frequency and the amounts of the heroin purchased from him by Simpson and others, and [Defendant's] agreement to supply heroin on a "front" at times, [Defendant] had reason to believe that at least part of the heroin would be further distributed to others. [Defendant] also arranged to have members of the conspiracy transport Simpson, heroin, and drug money between Detroit, Michigan and the vicinity of Roscommon-Houghton Lake, Michigan, by providing heroin at reduced costs or for free to those co-conspirators. To better protect the assets of the conspiracy, [Defendant] persuaded some members of the conspiracy to house Simpson, along with heroin and drug money used in furtherance of the conspiracy, at their residences in the Roscommon-Houghton Lake, and Mancelona areas, again by providing those co-conspirators with heroin at reduced costs or for free.

ECF No. 37 at PageID.141–42.

As part of his plea, Defendant waived his right to directly appeal his conviction "on any grounds," and waived his right to directly appeal his sentence of imprisonment if "not higher than 210 months." *Id.* at PageID.145. The undersigned ensured that Defendant was competent to enter his guilty plea on the record on May 16, 2016. ECF No. 42. Defendant understood his applicable sentencing exposure, *id.* at PageID.180, collateral consequences, *id.* at PageID.183, and his appeal waiver, *id.* at PageID.185–87.

Accordingly, on September 8, 2016, this Court sentenced Defendant within the applicable Guidelines range to 190 months of imprisonment on each count, to run concurrently.[1] ECF No. 40

---

[1] Count I carried a ten-year statutory minimum prison sentence. 21 U.S.C. § 841(b)(1)(A). But the applicable Guidelines Range was between 168–210 months. PSR ¶ 75. After being assessed two points under U.S.S.G. § 3B1.1(c) for his leadership role, and after a two-point reduction for accepting responsibility under U.S.S.G. § 3E1.1(a), Defendant's total offense level was the same as his base offense level: 30. PSR ¶¶ 31, 39. And Defendant's total criminal history score was 26, placing him in Category VI. PSR ¶ 56.

at PageID.169; *see also* ECF No. 43. And this Court sentenced Defendant to five years of subsequent supervised release. ECF No. 40 at PageID.170.

In May 2020, Defendant filed his *first pro se* motion for compassionate release under 18 U.S.C. § 3582, citing COVID-19 as an "extraordinary and compelling" reason to warrant his release. ECF No. 73. But this Court denied that motion without prejudice because Defendant did not exhaust his administrative remedies. ECF No. 74. Three months later, Defendant filed a *second pro se* motion for compassionate release, again citing the COVID-19 pandemic and underlying health conditions as "extraordinary and compelling reasons" for his release. ECF No. 83. This Court denied Defendant's second compassionate release motion with prejudice because, even though he exhausted his administrative remedies and his health conditions were sufficiently extraordinary and compelling at the height of the pandemic, his release was not warranted upon reconsideration of the 18 U.S.C. § 3553(a) sentencing factors. ECF No. 88 at PageID.755–57 (noting Defendant's significant criminal history and serious offense conduct). This Court thereafter denied Defendant's motion for reconsideration. ECF No. 90.

Three years later, while confined at FCI Milan in Milan, Michigan, Defendant filed his *third pro se* Motion for Compassionate Release, this time seeking release for non-COVID-19 medical conditions and familial circumstances. ECF No. 91. The Government responded on September 10, 2024, ECF Nos. 93; 94, and Defendant filed two replies, ECF Nos. 96; 97.

## II.

A sentence is a final judgment, and district courts generally lack the authority to modify sentences after they are imposed. 18 U.S.C. § 3582(b)–(c). Yet, 18 U.S.C § 3582(c)(1)(A) provides an exception to this "rule of finality" prohibiting sentence modification "in limited circumstances,"

known broadly as "compassionate release." *United States v. Lee*, No. 18-20198, 2024 WL 1508826 (E.D. Mich. Apr. 5, 2024) (citing *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021)).

In assessing motions for compassionate release, courts within the Sixth Circuit proceed with a threshold question, followed by a three-tiered analysis.

As a threshold issue, reviewing courts must assess whether the defendant has "satisfied the administrative exhaustion requirement of the First Step Act." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780, at *2 (E.D. Mich. June 14, 2024); *see also* 18 U.S.C. § 3582(c)(1)(A) (noting courts can review defendant-filed motions for compassionate release only once defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

If a defendant exhausted his administrative remedies, reviewing courts proceed to assess whether the defendant has shown both (1) "extraordinary and compelling reasons" that warrant a sentence reduction, and (2) that the requested reduction is "consistent with" applicable United States Sentencing Commission policy statements. *See* 18 U.S.C. § 3582(c)(1)(A). If a defendant satisfies both these conditions, reviewing courts turn to the factors promulgated in 18 U.S.C. § 3553(a) to determine whether the reduction authorized by statute is "warranted in whole or in part under the particular circumstances of the case." *Dillon v. United States*, 560 U.S. 817, 827 (2010).

### III.

#### A. Exhaustion

Defendant's Motion for Compassionate Release fails at the first step because he has not demonstrated administrative exhaustion. Before filing a motion for compassionate release, a prisoner must exhaust all administrative remedies within the prison where they are confined, or

wait 30 days after requesting the warden to file a motion for compassionate release, having received no response. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020).

Defendant claims that he "filed for Compassionate Release . . . at [FCI] Milan" on May 8, 2024, but "never received a response back from the warden[.]" ECF No. 91 at PageID.773. But Defendant provides no documentation or evidence to support such claim. *See generally* ECF Nos. 91; 96; 97. And the Bureau of Prisons does not have any record of Defendant's alleged request. ECF No. 93-3 at PageID.805. Thus, this Court could deny Defendant's motion without prejudice for failure to exhaust. *See, e.g.*, *United States v. Lopez-Gonzalez*, No. 2:16-CR-20591-1, 2024 WL 4231347, at *1 (E.D. Mich. Sept. 18, 2024) (denying compassionate release when the defendant "failed to offer evidence that he . . . exhausted his administrative remedies" and "the Bureau of Prisons ha[d] no records" of the same); *United States v. Acosta*, No. CR 5:17-40-KKC-2, 2021 WL 5629223, at *2 (E.D. Ky. Nov. 30, 2021) (same); *United States v. Howard*, No. 3:18-CR-29-TAV-JEM-1, 2025 WL 991026, at *2 (E.D. Tenn. Apr. 2, 2025) (same). But even assuming exhaustion, Defendant's Motion for Compassionate Release would be denied on the merits.

### B. Extraordinary & Compelling Reasons and U.S.S.G. § 1B1.13

If properly exhausted, a motion for compassionate release can only be granted if a defendant shows "extraordinary and compelling reasons" for their release. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020). The Court must also find that the sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Historically, federal courts have had significant discretion to define "extraordinary and compelling reasons." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780,

at *2 (E.D. Mich. June 14, 2024). But, on November 1, 2023, the United States Sentencing Commission amended its Policy Statement applicable to compassionate release, U.S.S.G. § 1B1.13. In so doing, the Commission clarified six categories of "extraordinary and compelling reasons" that—in the Commission's view—warrant sentence reduction. *Id.* Two categories are relevant to Defendant's Motion.[2] Each will be addressed in turn.

---

[2] In one of his reply briefs, Defendant argues he is entitled to compassionate release under U.S.S.G. § 1B1.13(b)(6) given a "change in the law" and his alleged "unusually long sentence." ECF No. 97 at PageID.948–49. But Defendant did not raise this argument in his initial Motion, which was limited to his medical conditions and familial circumstances. *See* ECF No. 91. "An argument raised for the first time in a reply brief will not be considered by this Court." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see also United States v. Jerkins*, 871 F.2d 598, 602, n. 3 (6th Cir. 1989) ("It is impermissible to mention an issue for the first time in a reply brief because the [opposing party] has no opportunity to responds." (internal quotations omitted)). And even if this Court were to consider Defendant's argument, it would reject it on the merits.

Defendant maintains he is entitled to a reduced sentence under Amendment 821, a retroactive sentencing amendment which altered the application of the Guidelines for certain offenders who either earned criminal history "status points" by committing the instant offense while serving another sentence ("Part A"); or had zero criminal history points at the time of sentencing ("Part B"). ECF No. 97 at PageID.949–50. Neither part reduces Defendant's sentence.

Part A of Amendment 821 amended U.S.S.G. § 4A1.1 such that (1) a defendant who had six or less criminal history points would receive no additional criminal history points for committing an offense while under sentence; and (2) a defendant who had seven or more criminal history points would receive only one additional criminal history point for committing an offense while under sentence. *See* U.S.S.G. § 4A1.1(e). Defendant did not have six or less criminal history points. PSR ¶ 54. True, Defendant received *two* additional criminal history points under § 4A1.1(e) for committing the instant offense while serving another sentence. PSR ¶ 55. Retroactively applying Amendment 821, he would only receive *one*, reducing his total criminal history points from 26 to 25. *See id.* ¶ 56. But this reduced score still places Defendant in Criminal History Category VI. *See* U.S.S.G. Sentencing Table Ch. 5, Pt. A (placing any defendant with 13 or more criminal history points in Category VI).

Part B of Amendment 821 added a new section to the Guidelines that reduces a defendant's offense level by two if the defendant, among 9 other criteria, "did not receive any criminal history points" at sentencing. U.S.S.G. § 4C1.1(a)(1). This plainly does not apply to Defendant who had fourteen prior convictions and a received a 24-point criminal history sub-score. PSR ¶¶ 50–54.

### 1. Medical Conditions

Start with Defendant's medical conditions. Defendant argues he is entitled to compassionate release because he suffers from (1) asthma, (2) hypertension, (3) sleep apnea, and (4) "anxiety [and] depression." ECF Nos. 91 at PageID.771, 777–78. But none of these conditions are sufficiently extraordinary or compelling.

The applicable Sentencing Commission Policy Statement contemplates four types of extraordinary and compelling medical circumstances. First, compassionate release may be warranted if the defendant suffers "from a *terminal* illness," defined as a "serious and advanced" condition "with an end-of-life trajectory." U.S.S.G. § 1B1.13(b)(1)(A) (emphasis added). Second, a defendant may be entitled to compassionate release if they suffer from a "*serious*" mental or physical condition that "substantially diminishes [their] ability to provide self-care" while confined and "from which [the defendant] is not expected to recover." *Id.* §1B1.13(b)(1)(B) (emphasis added). Third, extraordinary and compelling circumstances exist when a defendant's medical condition "requires *long-term or specialized . . . care* that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* §1B1.13(b)(1)(C) (emphasis added). Lastly, compassionate release is appropriate when the defendant's place of confinement is—or is immediately about to be—affected by an "*outbreak of infectious disease*" or an "ongoing *public health emergency*" that places the defendant at an "increased risk of suffering severe medical complications or death" and such risk "cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D) (emphasis added).

Here, Defendant does not allege that FCI Milan is affected by any infectious disease outbreak or public health emergency.[3] *See generally* ECF No. 91. Defendant does not argue that his conditions require long-term or specialized care, nor that he risks a serious "deterioration in health or death" without such care. U.S.S.G. §1B1.13(b)(1)(C). Defendant's conditions are not terminal and do not have an "end-of-life" trajectory. *Id.* § 1B1.13(b)(1)(A). And Defendant has not shown that his conditions are otherwise sufficiently "serious." *Id.* § 1B1.13(b)(1)(B). Indeed, aside from listing these four conditions in his handwritten Motion, Defendant does not explain how they affect him. *See generally* ECF No. 91. Although Defendant filed lengthy reply briefs, they contain only conclusory claims that his medical conditions are "chaotic and unmanageable" because—in Defendant's view—he still has asthma and his blood pressure still exceeds "normal limits." ECF No. 97 at PageID.941.

Even if these conditions were sufficiently severe, Defendant's medical records reflect that he regularly receives medication to mitigate his asthma and sleep apnea and manage his blood pressure. ECF No. 91 at PageID.778–88; *see also* ECF Nos. 97 at PageID.941–42, 943–45; 94-1 at PageID.843 (sealed). Defendant is not prescribed any anxiety medication, but does not allege

---

[3] Defendant dedicates several pages of one of his reply briefs to the COVID-19 pandemic. *See* ECF No. 97 at PageID.934–37 (noting "COVID-19 has not by any means been eradicated from our daily lives, and is still an active concern [at] FCI Milan," which, Defendant contends, does not sufficiently prioritize "testing" and does not "allow masks to be worn by inmates"). But Defendant did not discuss COVID-19 in his Motion for Compassionate Release. ECF No. 91. "An argument raised for the first time in a reply brief will not be considered by this Court." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). And, even if it were considered, the Sixth Circuit has largely foreclosed the claim that COVID-19, "absent extenuating circumstances not present here," warrants compassionate release since vaccines are "now fully available to federal prisoners." *See United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). Indeed, as of May 2023, COVID-19 is no longer a public health emergency. Press Release, U.S. Dep't of Health and Hum. Servs., HHS Secretary Xavier Becerra Statement on End of the COVID-19 Public Health Emergency, (May 11, 2023), https://public3.pagefreezer.com/browse/HHS.gov/ 02-01-2024T03:56/https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html.

any medication is necessary or unavailable to him at FCI Milan if his condition worsens. *See* ECF No. 91 at PageID.778. Although he claims FCI Milan "has refused to provide [him] with [a] sleep apnea machine," ECF No. 97 at PageID.947, he does not explain—let alone provide evidence—that this machine is necessary in addition to his prescribed sleep apnea medication. *See generally id.*; *see also* ECF No. 94-1 at PageID.843 (sealed).

District Courts within the Sixth Circuit—including this Court—routinely hold that Defendant's conditions are neither extraordinary nor compelling, and do not warrant compassionate release. *See, e.g.*, *United States v. Hopkins*, 594 F. Supp. 3d 852, 858 (E.D. Mich. 2022) ("[A]sthma is neither extraordinary nor compelling. Asthma is common.") *aff'd*, No. 22-1170, 2022 WL 18955859 (6th Cir. Oct. 6, 2022); *United States v. Taylor*, No. 2:17-CR-20640-3, 2021 WL 2283743, at *2 (E.D. Mich. June 4, 2021) (noting "defendant's anxiety and depression are . . . not extraordinary or compelling reasons for release"); *United States v. Allen*, No. 2:16-CR-169, 2024 WL 2812319, at *1 (S.D. Ohio June 3, 2024) ("While . . . sleep apnea [is a] condition[] that need[s] to be treated, Defendant fails to provide any evidence that he is unable to provide self-care or that th[i]s[] condition[] [is] not being properly treated."); *United States v. Walker*, No. 6:16-CR-00043-GFVT, 2025 WL 905794, at *1 (E.D. Ky. Mar. 25, 2025) (same, with hypertension). This Court follows suit, here.

### 2. Family Circumstances

Liberally construed, Defendant's Motion for Compassionate Release also argues he must be released to care for his 92-year-old grandmother, who lives alone in Detroit, Michigan. ECF Nos. 91 at PageID.772; 97 at PageID.951. Not so.

As explained in the Sentencing Commission's applicable policy statement, a defendant may be entitled to compassionate release if their child, spouse, partner, parent, grandparent,

grandchild, or sibling is (1) incapacitated, and (2) the defendant is that family member's "only available caretaker." U.S.S.G. § 1B1.13(b)(3)(C)–(D). A family member is incapacitated if they are "completely disabled, cannot carry on any self-care, or [are] totally confined to a bed or chair." *United States v. Evans*, No. 1:21-CR-20086, 2024 WL 4906059, at *2 (E.D. Mich. Nov. 27, 2024) (internal quotations omitted). Defendant has not shown either element.

Start with his grandmother's capacity. Defendant *alleges* his grandmother suffers from anemia, diabetes, hypertension, and severe arthritis. ECF No. 97 at PageID.951. Although these are relatively common conditions in older individuals, Defendant claims they "majorly impact[] her physical ability to even clean herself" and fully prevent her from providing "selfcare." *Id.* This Court recognizes the complications these conditions may present to elderly individuals living alone. But Defendant provides no evidence to substantiate his grandmother's complications and incapacity. *See* ECF Nos. 91; 96; 97. This failure is fatal. *See United States v. Evans*, No. 1:21-CR-20086, 2024 WL 5004321, at *1 (E.D. Mich. Nov. 27, 2024) (denying compassionate release because Defendant did "not substantiate his mother's [alleged] incapacity").

Defendant has also not demonstrated that he is his grandmother's "only available caretaker." U.S.S.G. § 1B1.13(b)(3)(D). Defendant argues to the contrary that, although his grandmother has a surviving son and granddaughter—Defendant's sister—these two individuals could not feasibly care for his grandmother because (1) the son "lives in South Carolina and . . . [has] lost most[] functioning of his hands" and (2) the granddaughter also lives in South Carolina, cannot "leave her place of employment," and "barely has enough money to support her own children." ECF No. 97 at PageID.951. But Defendant provides no evidence to support these claims, *see generally* ECF Nos. 9l; 96; 97, and this Court cannot grant compassionate release without such supporting evidence. *See United States v. Richardson*, No. 5:18-CR-507-LFL, 2020

WL 2200853, at *2 (E.D.N.C. May 6, 2020) ("The court declines to grant compassionate release in the absence of a robust evidentiary showing that defendant is the only available caregiver."); *United States v. Moore*, Crim. A. No. 14-209-2, 2020 WL 7024245, at *5–6 (E.D. Pa. Nov. 30, 2020) (denying compassionate release because "[defendant] does not adduce evidence to find he is the only available caregiver for his mother" and noting that "courts [have] denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the sole individual capable of caring for the parent").

And, even if Defendant presented evidence that his family members could not *practically* or *feasibly* care for his grandmother, both would still be "*available*" caregivers for the purposes of § 1B1.13(b)(3). Notably, the Sentencing Commission does not define the phrase "only available caregiver." *See id.* In the absence of a definition, Defendant's argument makes some sense. If his grandmother was sufficiently incapacitated and required full-time care, it would be impractical for her out-of-state son or granddaughter to move to Michigan to provide adequate care. And her moving to South Carolina would be equally impractical, especially at her late age. But courts have rejected these practicality arguments as unpersuasive and found similar circumstances unextraordinary and uncompelling.[4]

---

[4] To some extent, the Sentencing Commission's policy guidance presents an interesting line-drawing problem. At what point does a potential caregiver's financial means, geographic proximity, or their own physical or mental conditions render them "unavailable" to care for a defendant's family member for the purposes of § 1B1.13(b)(3)? Is a caregiver "available" if they live in a foreign country? What if they are unemployed? Indeed, the term "available" is ambiguous even in ordinary parlance, and could be used to broadly describe all *possible* caregivers or, narrowly, only those *practical* caregivers. *See* "Available," WEBSTER'S NEW AMERICAN DICTIONARY, UNABRIDGED 189 (2nd ed., 1934) (defining the term both as theoretically "capable of being used to accomplish a purpose" and readily "at disposal; accessible or attainable"). This Court need not draw the line here because, as explained, even if Defendant sufficiently *alleged* his family members were "unavailable" to care for his grandmother, he has not provided any evidence in support.

The District Court for the District of Columbia's decision in *United States v. Shabazz* is on point. There, the defendant sought compassionate release to care for his 80-year-old mother who lived in New York. *United States v. Shabazz*, No. CR 17-43 (JDB), 2021 WL 4306129, at *1–2 (D.D.C. Sept. 22, 2021). Unlike Defendant here, the *Shabazz* defendant produced some evidence—a doctor's note—suggesting that his mother's conditions "compromised her ambulation" and "made it impossible for her to continue living by herself." *Id.* at *1. But the *Shabazz* court still denied compassionate release because the defendant had a sister who was "available" to care for their mother. *See id.* at *5. The defendant argued to the contrary that his sister "live[d] in South Carolina" and was "already spread thin" because she "work[ed] as a nurse," cared for her "disabled granddaughter," and was helping "her husband recover from . . . surgery." *Id.* at *2. Although the District Court noted the defendant "ma[d]e valid points," it nevertheless rejected his argument as unpersuasive and insufficient to warrant compassionate release. *Id.* at *5. Indeed, the Court concluded that, although "not ideal," it was "*possible*" for either the defendant's mother to move to South Carolina or the defendant's sister to move to New York to ensure care. *Id.* (emphasis added). These possibilities, no matter how impractical, "undermine[d]" the argument that the defendant was his mother's *only* available caregiver. *Id.*

The same result here. Defendant's allegations suggest at least two other family members are literally "available" to care for his grandmother.[5] ECF No. 97 at PageID.951. This Court recognizes that their care may not be the most feasible. But "[t]he availability, not the feasibility, of that care . . . is what this Court considers most important in assessing" extraordinary and

---

[5] Defendant's PSR also suggests he has three adult children who—like Defendant's grandmother—live in Detroit, Michigan. PSR ¶ 63. Defendant also notes that his grandmother receives care from community members in her church and food deliveries from the American Red Cross. ECF No. 97 at PageID.951.

compelling reasons for compassionate release. *United States v. Hanner*, No. 1:07-CR-10028-01, 2023 WL 159009, at *4 (W.D. La. Jan. 11, 2023).

At bottom, without supporting evidence of incapacity or the lack of available caregivers, Defendant's aging grandmother does not warrant his compassionate release. Indeed, "[m]any, if not all inmates, have aging and sick parents" and grandparents; "[s]uch circumstance is not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)

### C. Sentencing Factors

But this Court's work is not done. Even if Defendant demonstrated administrative exhaustion—he has not—and even if he demonstrated extraordinary and compelling reasons for his release—he has not—compassionate release is not warranted upon a *de novo* review of the 18 U.S.C. § 3553 sentencing factors.

The burden is on Defendant to "make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (presuming that a "district court's initial balancing of the § 3553(a) factors ... [presumably] remains an accurate assessment as to whether those factors justify a sentence reduction."). While this Court must consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a), it need not specifically articulate its analysis of every single § 3553(a) factor if the record as a whole demonstrates that the pertinent factors were considered. *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020).

The pertinent § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—

>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>       . . . .
> (5) any pertinent policy statement—
>       . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

This Court has already sentenced Defendant after considering the § 3553(a) factors. *See* ECF No. 43. This Court's "initial balancing of the § 3553(a) factors during [Defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951 (6th Cir. 2021). And Defendant has not demonstrated any flaw in this Court's analysis. Indeed, Defendant does not discuss the relevant sentencing factors whatsoever in his Motion. *See generally* ECF No. 91.

The severity of Defendant's offense conduct can hardly be overstated. Defendant conspired to, and did, distribute more than 10,000 "hits" of heroin from Detroit to Roscommon, Michigan. *See* PSR ¶¶ 7–25. Although nonviolent, Defendant's crime was far from victimless. *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("Society as a whole is the victim when illegal drugs are being distributed in its communities."). And Defendant's role in the charged conspiracy was far from passive—he instead served as the conspiracy's conductor. *See* PSR ¶¶ 10–21 (noting Defendant initially thought of distributing heroin "up north" in Roscommon and proposed his coconspirators lived and worked out of the same house).

The seriousness of Defendant's offense is only compounded by the significance of his criminal history. At sentencing, the undersigned noted that Defendant "ha[d] the highest number of criminal history points of any defendant I've been introduced to" and, "of the felony convictions he's got, eight of them occurred while he was on parole[.]" ECF No. 43 at PageID.207. By the age of 36, Defendant had amassed fourteen adult criminal convictions. PSR ¶¶ 40–53. Most involved theft. *Id.* Many involved firearms. *Id.* And some involved home invasion. *Id.* Indeed, Defendant met his main drug-trafficking coconspirator in prison, and began discussing their distribution "about a month" after they were released. PSR ¶ 8.

Defendant's conduct while confined has shown a similar disrespect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). Since beginning his sentence in 2017, Defendant has physically assaulted another inmate, causing "serious injury," and has possessed contraband cell phones on multiple occasions. ECF Nos. 93-4 at PageID.807–09; 93-5 at PageID.812. This further undermines Defendant's request for compassionate release. *See United States v. Fuentes-Majano*, No. 3:07-CR-00005-10, 2022 WL 17408641, at *1 (M.D. Tenn. Dec. 2, 2022) (finding § 3553 factors did not support compassionate release because defendant "assault[ed] an inmate" and possessed a "phone" while confined); *aff'd*, No. 22-6085, 2023 WL 8868782 (6th Cir. Oct. 3, 2023)

So too does the remaining length of Defendant's sentence. Several of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a motion for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (citing *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) and 18 U.S.C. § 3553(a)(2)(A)). Here, Defendant has served approximately 50% of his nearly 16-year sentence. *See* ECF No. 93-2 at PageID.803 (projecting Defendant's release on February 16,

2032). His release at this juncture would not provide just punishment nor reflect the seriousness of his offense.

For these reasons, even if Defendant had exhausted his administrative remedies and presented sufficient extraordinary and compelling reasons to justify compassionate release, Defendant has not carried his burden to convince this Court that his § 3553(a) analysis would be different today nor that consideration of the § 3553(a) factors warrant a sentence reduction. So, his Motion for Compassionate Release will be denied.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 91, is **DENIED**.

Dated: April 24, 2025					s/Thomas L. Ludington
								THOMAS L. LUDINGTON
								United States District Judge